No. 05-15-00148-CR

IN THE

COURT OF APPEALS

FIFTH DISTRICT OF TEXAS at DALLAS

FILED IN
5TH COURT OF APPEALS
LISA MATZ CLERK
2015 AUG -4 PM 1: 16

Robert E. Marzett,

Appellant,

v.

STATE OF TEXAS

Appellee,

Appealed from COLLIN COUNTY COURT AT LAW #1

COLLIN COUNTY, TEXAS

No. 001-83797-2014

Appellant's Brief

Robert E. Marzett
9720 Coit Road #220-116
Plano, Texas 75025
214-868-8698
remarzett@gmail.com

No. 05-15-00148-CR

IN THE

COURT OF APPEALS

FIFTH DISTRICT OF TEXAS at DALLAS

Robert E. Marzett,

Appellant,

v.

STATE OF TEXAS

Appellee,

Appealed from COLLIN COUNTY COURT AT LAW #1

COLLIN COUNTY, TEXAS

No. 001-83797-2014

Appellant's Brief

Robert E. Marzett
9720 Coit Road #220-116
Plano, Texas 75025
214-868-8698
remarzett@gmail.com

No. 05-15-00148-CR

---

Robert E. Marzett,
Appellant

v.

STATE OF TEXAS,
Appellee

---

IDENTY OF PARTIES & COUNSEL

---

1.  Defendant/Appellant
    Robert E. Marzett
    9720 Coit Road #220-116
    Plano, Texas
    214-868-8698
    remarzett@gmail.com

2.  Plaintiff/Appellee

    STATE OF TEXAS
    COLLIN COUNTY DISTRICT ATTORNEY
    2100 Bloomdale Rd.
    McKinney, Texas 75071

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ....................................ii

TABLE OF CONTENTS ...................................................iii

INDEX OF AUTHORITIES ...............................................iv

STATEMENT ON ORAL ARGUMENT ................................x

STATEMENT OF THE CASE ...........................................x

ISSUES PRESENTED ......................................................xi

STATEMENT OF FACTS ..................................................1

SUMMARY OF THE ARGUMENT ....................................5

STANDARD OF REVIEW ..................................................8

ARGUMENT AND AUTHORITIES ....................................9

CONCLUSION ..............................................................67

PRAYER ......................................................................67

CERTIFICATE OF COMPLIANCE ..................................68

CERTIFICATE OF SERVICE ...........................................68

# INDEX OF AUTHORITIES

## CONSTITUTIONS

### United States of America

U.S. Constitution, Art. I. ...................................................................51

U.S. Constitution, Art. II. ..................................................................51

U.S. Constitution, Art. III. ................................................................51

U.S. Constitution, Art. I. §8, cl. 17 ...............................................38,44

U.S. Constitution, Art. I, §10, cl. 1 ...................................................39

U.S. Constitution, Art. IV, §3, cl. 2. ............................................38,44

US. Constitution, Amend. IV .........................5,6,10,25,26,28,35

US. Constitution, Amend. VI .........................52,55,57,58

### Constitution of Texas

Texas Constitution, Art. I, §9 ....................................5,26,33,35

Texas Constitution, Art. I, §10 ........................................39,52

Tex. Constitution, Art. II, §1 ..................................................50

Texas Constitution, Art. III § 35 ....................................43,59,64

Texas Constitution, Art. V. §12(b) ....................................47,56

## CASES

### Federal

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) ...................12,23

*Bryan v. United States*, 524 U.S. 184 (1998) ...............................16

*Davis v United States*, 131 S. Ct. 2419 (2011) ...........................19

*Delaware v. Prouse*, 440 U.S. 648 (1979) ...........................10,12,22

*Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510 (2012) .........23

*Giaccio v. Pennsylvania*, 382 U.S. 399 (1966) ...............................17

*Heien v. NORTH CAROLINA*, 135 S.Ct. 530 (2014) .................11,28,29

*Hepburn & Dundas v. Ellzy*, 6 U.S. 445, 452 (1805) ...................36,37

*International Shoe Co. v. Washington*, 326 U.S. 310 (1985) ..............49

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)

........................12

*Maryland v. King*, 133 S. Ct. 1958 (2013) ....................................23

*Navarette v. California*, 134 S. Ct. 1683 (2014) ............................22

*New York v. United States Et. AL.*, 505 U.S. 144 (1992) ..................39

*Northrup v. CITY OF TOLEDO POLICE DEPARTMENT*,

 UNITED STATES COURT OF APPEALS,

 No. 14-4050 (May 13, 2015) ............................................33,34

*Ogden v. Slade*, 1 Tex. 13 (184........................................................39

*Ornelas v. United States*, 517 U.S. 690 (1996) ..............................11

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ................58

*Pennoyer v. Neff*, 95 U.S. 714, 722-724 (1877) ..............................49

*Pennsylvania v. Mimms*, 434 U.S. 106 (1977) ...............................23

*Prince v. United States*, 521 U.S. 898, 918-922 (1997) ....................51

*Reynolds v. United States*, 98 U.S. 145 (1878) ..............................19

*Terry v. Ohio*, 392 U.S. 1 (1968) .........................................12,13,23

*United States v. Bass*, 404 U.S. 336 (1971) ..................................17

*United States v. Bevans*, 16 U.S. (3 Wheat.) 338, (1818) ................38

*United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003) .....16,19

*United States v. Davis*, 598 F.3d 1259

(11th Cir. 2010), aff'd, 131 S. Ct. 2419 (2011) .......................19

*United States v. Johnson*, 457 U.S. 537 (1982) ...........................19

*United States v. Lanier,* 520 U.S. 259 (1997) ...........................17,60

*United States v. Lopez- Soto*, 205 F.3d 1101 (9th Cir. 2000) ........19,20

*United States v. McDonald*, 453 F.3d 958 (7th Cir. 2006) ..............19

*United States v. Miller*, 146 F.3d 274 (5th Cir. 1998) ....................15

*United States v. Nicholson*, 721 F.3d 1236 (10th Cir. 2013) ........10,11

*United States v. R.L.C.,* 503 U.S. 291 (1992) .............................16

*United States v. Robinson*, 414 U.S. 218 (1973) .........................23

*United States v. Tibbetts*, 396 F.3d 113 (10th Cir. 2005) ...............16

*United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76 (1820) ..............17

*Winter v. People of State of New York*, 333 U.S. 507,

    517-520 (1948) ...............................................................59

*Whren v. United States*, 517 U.S. 806 (1996) .........11,15,22

*Younger v. Harris*, 401 U.S. 37, 44-45 (1971) .............................51

## Texas

*Amplifone Corp. v. Cameron County*

    (Civ. App. 1979) 577 S.W.2d. 567, 570 ...............................38

*Barber v. State*, 191 S.W.2d. 879 (1945) ...................................48

*Casias v. State, Tex.Cr.App.*, 503 S.W.2d. 262, 239 (1973)...........47,56

*Drumm v. State*, 560 S.W.2d 944 (1977) ...................54

*Ex parte Cannon*, 546 S.W.2d. 266, 269-270 (1976) ................46,47,56

*Ex parte Duncan*, 42 Tex.Cr.R. 661, 62 S.W. 758 (1901) ...............56

*Ex parte Ports*, 21 S.W.3d 444, 446 (Tex. App.--San

    Antonio 2000, pet. ref'd) ...............................................43

*E-Z Mart Stores, Inc. v. Terry*, 794 S.W.2d. 63

(Tex.App. – Texarkana 1990, writ denied) ................51,57,61,65

*Fairow v. State,* 943 S.W.2d 895, 900 (1997) ....................61,65

*Galveston, H. & H.R. Co. v. Anderson*

    (Civ. App. 1921) 229 S.W. 998 .........................37,38

*George v. State,* 145 S.W.2d 187, 188 (1940) ......................55

*Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972) .............43,58

*Harvey v. Culpeper,* 801 S.W.2d 596, 600-01

    (Tex.App.-Corpus Christi 1990, no writ). ..............61

*Heine v. Texas Dep't of Pub. Safety,* 92 S.W.3d. 642

    (Tex. App. – Austin 2002, pet denied)....................8

*In re J.L.,* 163 S.W.3d 79, 85 (Tex. 2005) ......................63,64

*King v. State,* 29 S.W.3d. 556 (Tex. Crim. App. 2000) ...............9

*Louder v. De Leon,* 754 S.W.2d 148, 149 ....................61,65

*Lum v. State,* 903 S.W.2d. 365

    (Tex. App. – Texarkana 1995, pet. Ref'd) ..............61,65

*Luquis v. State,* 72 S.W.3d 355, 365 n.26

    (Tex. Crim. App. 2002) ...............................43

*Mercedes Benz Credit Corp. v. Rhyne,*

    925 S.W.2d. 664, 666 (Tex. 1996) ....................8

*Office of Pub. Util. Counsel v. Pub. Util. Comm'n,*

    878 S.W.2d. 598, 600 (Tex. 1994) ....................64

*Ogden v. Slade,* 1 Tex. 13, 14 (1846) .........................39

*Pledger v. Schoellkopf,* 762 S.W.2d. 145 (1988) ..................42

*Quick v. City of Austin,* 7 S.W.3d. 109 (Tex. 1998) ...............9

*Sixth RMA Partners, L.P. v. Sibley,*

    111 S.W.3d. 47, 56 (Tex. 2003) .....................42

*State v. Evans*, 843 S.W.2d 576 (Tex.Cr.App. 1992) ......................60

*State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App.
 2006), cert. denied, 127 S.Ct. 176 (2006) ...........................58

*State v. Steelman*, 93 S.W.3d. 102 (Tex.Crim.App. 2002) ..............35

*Texas Dep't of Pub. Safety v. Nail*, 305 S.W.3d.
 673 (Tex. App. – Austin 2010, no pet.) ..............................9

*Thomas v. State*, 919 S.W.2d. 427 (1996) ..............................56,60

*Travis v. State*, 959 S.W.2d 32 (Ark. 1998)
 722 S.W.2d 694 (Tex. 1986) ............................................25

*Waggoner v. Morrow*, 932 S.W.2d. 627, 631
 (Tex.App – Houston [14th Dist.] 1996, no writ) ....................9

*Walker v. Packer*, 827 S.W.2d. 833, (Tex. 1992) .......................8

*Weatherly v. Martin*, 754 S.W.2d. 790 (1988) ..........................42

## STATUTES

### Federal

12 U.S.C. §411 ........................................................39

### Texas

Gov.Code, Chap. 30 ....................................................50

Gov. Code §311.005(7) .................................................36

Gov.C. §312.002 .......................................................37

TC §502.040 ..............................................27,28,32,33,53

TC §502.473 ...........................................................53

TC §504.010 ........................................................32,56

TC §504.943 ...........................................................27,32,53

TC §§521.001(8) .....................................................36,40

TC §541.002(2) ...............................................................40

TC §541.002(3) ...............................................................40

TC §541.002(5) ...............................................................36

TC §601.002(11) ...............................................................36

**North Carolina Statutes**

North Carolina General Statutes §20-4.01(45) ...............................30

## RULES

C.Crim.Proc. Art. 14 .............................................5,26,33,35,47

C.Crim.Proc. Art. 21.20 ...............................................62,63

C.Crim.Proc. Art. 21.21 .............................................52,62,63

C.Crim.Proc. Art. 21.22 ...............................................62,63

C.Crim.Proc Art. 27.08 ...............................................56

C.Crim.Proc. Art. 45.002 ...............................................62

C.Crim.Proc. Art. 45.019(e)(2) ...............................................50

C.CrimProc., Art. 45.201 ...............................................49

Tex.R.Civ.Proc., Rule 53 ...............................................51

Tex.R.Civ.Proc., Rule 93 ...............................................42

Texas Rule of Evidence 201(b) ...............................................63

Texas Rule of Evidence 701 ...............................................61

Texas Rule of Evidence 702 ...............................................61

Texas Rule of Evidence 704 ...............................................61

Texas Rule of Evidence 705 ...............................................61

# OTHER AUTHORITIES

*Carratt v. Morley*, (1841) 113 Eng. Rep. 1036 ..........................14

Darryl K. Brown, *Democracy and Decriminalization,*

    86 Tex. L. Rev. 223, 232 n.31 (2007) ...............................21

*Malcomson v. Scott*, 23 N.W. 166 (Mich. 1885) .......................14

Rachel E. Barkow, *Administering Crime,*

    52 UCLA L. Rev. 715 (2005) .......................................21

Restatement of Torts § 121 ............................................13

Restatement (Second) of Torts § 121 ...................................13

Wayne A. Logan, *Police Mistakes of Law,*

    61 Emory L.J. 69, 86 (2011) .......................................18

W. Blake Odgers & Walter Blake Odgers, *The*

    *Common Law of England* 481 (2d ed. 1920) ....................14,15

## STATEMENT ON ORAL ARGUMENT

The points of error in this appeal are adequately presented in the appellate record. Marzett believes that oral argument would not significantly aid the Court in determining the legal issues presented on appeal and the Court should exercise its discretion to decide this case without such argument. TEX. R. APP. P. 39.8.

## STATEMENT OF THE CASE

This case originated in the CITY OF FRISCO MUNICIPAL COURT

where a CLERK of the MUICIPAL COURT filed a charging instrument labeled "complaint" alleging that Appellant failed to register his private property as a motor vehicle and display license plates under TRANSPORTATION CODE §502.493, (hereinafter "TC) (CR_11). Appellant was convicted in a bench trial in the MUNICIPAL COURT (CR_19). Appellant was required to post a bond for twice the amount of the fine and court cost (CR_230), in order to perfect his appeal to the COUNTY COURT AT LAW #1 (CR_13-14). Appellant was again convicted in a trial de novo to the bench in the COUNTY COURT AT LAW #1 (CR_340). Appellant appealed his conviction in the COUNTY COURT AT LAW #1 to the Fifth District Court of Appeals (CR_388-389).

## ISSUES PRESENTED

Issue I. Belcher Did Not Have "Reasonable Suspicion" To Conduct A Warrantless Seizure of Appellant .......9

Issue II. The trial JUDGE erred as matter of law, when she refused to disqualify herself ......................35

Issue III. The COURT erred as a matter of law in applying the TC as the choice of law ...........................41

Issue IV. The TC "as applied" to appellant's private property and activities, violated the Texas Constitution, Art. III., §35 ...........................................42

Issue V. Appellant committed no act within the territorial jurisdiction of the TC ...............................44

Issue VI. The COUNTY COURT lacked subject matter jurisdiction of this case ...............................45

Issue VII. The COURT lacked personal jurisdiction

of Appellant ...........................................................48

Issue VIII.    The CLERK had no standing to act as affiant
               on a charging instrument ...............................49

Issue IX.      The charging instrument was insufficient to
               give appellant constitutional notice of the cause
               and nature of the accusation against him ............52

Issue X.       The COURT erred as a matter of law in finding
               the charging instrument substantively sufficient
               to allege an offense ...................................54

Issue XI.      The TC "as applied" to appellant violated U.S.
               Constitution, Sixth Amendment .......................57

Issue XII.     The Subject Matter of the TC is unconstitutionally
               vague.....................................................58

Issue XIII.    Belcher's testimony should have been limited ........60

Issue XIV.     The CLERK's affidavit is defective as a
               charging instrument ...................................62

Issue XV.      Belcher's unsworn report cannot support an
               Information .............................................63

Issue XVI.     Appellant's request for judicial notice of
               adjudicative facts should have been granted ...........63

Issue XVII.    The COURT erred as a matter of law and
               abused its discretion when it refused to strike the
               testimony of BELCHER ...............................64

Issue XVIII.   The COURT erred as a matter of law when it found
               the evidence sufficient to support conviction ...........65

TO THE HONORABLE 5th DISTRICT COURT OF APPEALS:

In this appeal, Appellant Robert E. Marzett (hereinafter "Appellant"),

request that this Court reverse the judgment of the COLLIN COUNTY

COURT AT LAW #1 (hereinafter "COUNTY COURT").

## STATEMENT OF FACTS

The Fourth Amendment permits police officers to stop a motor

vehicle and its occupants for law enforcement purposes only when there is at

least reasonable suspicion that a law has been violated. This case presents

the question whether an officer's misinterpretation of the TC can form the

basis for reasonable suspicion.

On June 24, 2013, Appellant was seized, without a warrant by a

CITY OF FRISCO POLICE OFFICER, Lindsey Belcher (hereinafter

"Belcher") while traveling in the city of FRISCO, county of Collin, state of

Texas (CR_260). Belcher was acting as a police officer[1] of a local authority[2] under the TC when she seized Appellant because his private property displayed no license plates on the rear (RR_Vol_4, 24:4-27:14). Appellant informed Belcher that he was not engaged in "transportation" and his private property was not being used as a "device" to "transport or draw" persons or property on a "public highway" (CR_260). Belcher formally arrested Appellant, impounded Appellant's private property and he was confined in the CITY OF FRISCO JAIL (CR_260). Appellant was required to post a bond payable only in Federal Reserve notes in order to secure his release (CR_230) and the release of his property. A charging instrument labeled "COMPLAINT" was filed on June 28, 2013, alleging failure to display registration insignia and license plates (CR_11). Appellant was convicted in the MUNICIPAL COURT and appealed (CR_13-14). A bond payable in Federal Reserve notes for twice the amount of the fine was required in order to perfect his appeal to the COUNTY COURT (CR_230).

---

[1] TC §541.002(4) ""Police officer" means an officer authorized to direct traffic or arrest persons who violate traffic regulations."

[2] TC §541.002(3)(A) "Local authority" means a county, municipality, or other local entity authorized to enact traffic laws under the laws of this state;..."
TC §541.002(5) "State" has the meaning assigned by Section 311.005, Government Code, and includes a province of Canada.
Gov. Code §311.005(7) ""State," when referring to a part of the United States, includes any state, district, commonwealth, territory, and insular possession of the United States and any area subject to the legislative authority of the United States of America."

On August 29, 2014, appellant filed a motion to disqualify the COUNTY COURT JUDGE Corrine Mason, (hereinafter "Mason") (CR_231-245). On September 3, 2014, the COUNTY COURT denied the motion and referred it to the FIRST ADMINISTRATIVE JUDICIAL DISTRICT (CR_249). On September 3, 2014, JUDGE Mary Murphy denied appellant's motion (CR_250). On September 11, 2014, the COUNTY COURT mailed appellant notice of the denial and set a pretrial hearing for October 1, 2014 (CR_250, 255). On September 19, 2014, Appellant requested findings and conclusions regarding the denial of the motion to disqualify the trial judge (CR_256-258).

On September 29, 2014, appellant filed several pre-trial motions including a Motion to quash complaint (CR_259-292); motion to exclude expert and lay testimony (CR_303-307); request for judicial notice of adjudicative facts (CR_308-313); request for judicial notice of Texas law (CR_293-302); and a motion to set a hearing (CR_314-315). On November 3, 2014, appellant filed exhibits in support of appellant's request for judicial notice of adjudicative facts (CR_320-337). On October 1, 2014, the COURT issued an order setting a hearing for November 13, 2014 (CR_318).

On November 13, 2014, a hearing was held to consider appellant's motions (RR_Vol_3). Appellant argued the merits of his motion to exclude

expert and lay testimony (RR_Vol._3, 61:4-76:10), request for judicial notice of law (RR_Vol._3, 7:7-12:11), request for judicial notice of adjudicative facts (RR_Vol._3, 12:12-14:17), and special appearance and motion to quash complaint (RR_Vol._3, 14:18-61:2). After hearing arguments, the COURT issued orders denying two of appellant's motions (CR_338-339). The COURT refused to consider appellant's motion to exclude expert and lay testimony, because the motion should have been labeled a motion in limine. Because it was mislabeled, Mason would not consider it. The COURT denied Appellant's motion to quash (CR_339) and his request for judicial notice of adjudicative facts (CR_338). On November 20, 2014, appellant was convicted in a trial to the court and ordered to pay a fine of $ 99.00 plus court cost of $249 in Federal Reserve notes (CR_340). On November 24, 2014, appellant filed a request for findings and conclusions regarding denial of appellant's motions (CR_344-345), and the COURT's judgment of guilt (CR_346-348). On December 18, 2014, appellant filed a request for past due findings and conclusions regarding his motions (CR_349-351), the judgment (CR_346-348), and a motion for new trial (CR_352-376). On January 7, 2015, the COUNTY COURT issued findings and conclusions regarding guilt (CR_377-378) and a docket entry denying appellant's motion for a new trial.

On January 13, 2014, appellant filed a request for special amended findings and conclusions on the issue of guilt (CR_379-382). On January 14, 2015, the COURT certified appellant's right of appeal (CR_391). On February 3, appellant filed notice of appeal (CR_388-389), request for the CLERK'S RECORD (CR_384-385) and request for the REPORTER'S RECORD (CR_386-387).

## SUMMARY OF THE ARGUMENT

The traffic stop of Appellant's car, based solely on the police officer's misinterpretation of local traffic law, violated the U.S. Constitution, Fourth Amendment, Texas Constitution, Art. I, §9 and the CODE OR CRIMINAL PROCEDURE (hereinafter "C.Crim.Proc.") Chapter 14.

This Court has long held that a traffic stop is valid under the Texas Constitution, Art. I, §9, C.Crim.Proc. Art. 14.01, and the Fourth Amendment only if officers have objectively reasonable suspicion to believe that a law is being violated. That objective inquiry can be properly performed only by measuring the facts against the correct interpretation of the law. Otherwise, the reasonable suspicion doctrine would be at odds with various common-law principles, including the ancient maxim that ignorance of the criminal law is no excuse. Allowing traffic stops based on "reasonable" mistakes of

law also would be in tension with multiple canons of statutory construction aimed at preventing the government from benefitting from ambiguity in criminal statutes. Finally, such a rule would subvert warrantless seizure provision's core purpose of constraining officer discretion, for it would confer upon the police the authority to seize citizens when the facts known to the officers, measured against an accurate view of the law, reveal only wholly innocent conduct.

To be sure, warrantless seizure provisions tolerate traffic stops based on reasonable mistakes of fact. But the reasons for doing so do not carry over to mistakes officers make about applicable law. The Fourth Amendment affords officers leeway to make good-faith mistakes of fact because officers need flexibility to make quick, ad hoc factual assessments in the field. And Courts evaluating the legality of traffic stops have already shown that they can easily distinguish mistakes of law from those of fact.

Law enforcement incentives would be skewed if stops based on officer mistakes of traffic law were upheld as proper. Most notably, police departments would be discouraged from using resources at their disposal to ensure that officers on patrol have an accurate understanding of the law. Police departments would also be discouraged from asking lawmakers to clarify ambiguous laws, for such clarifications would shrink officer

Appellant's Brief
No. 05-15-00148-CR

discretion. Indeed, if motorists were subject to seizures based on mistaken interpretations of laws, it also would be much more difficult – indeed, sometimes downright impossible – for people to avoid being exposed to traffic stops. And to the extent the COUNTY COURT's holding would allow stops based on reasonable mistakes as to the existence of law, the universe of circumstances allowing officers to impose upon citizens the burdens of traffic stops would be broader still.

The safety objectives of traffic laws do not make police misinterpretations of such laws more tolerable. In Texas, as elsewhere, it is the legislature's job to decide what traffic activities should be prohibited because they are unsafe. It is the responsibility of law enforcement to learn and enforce those laws. Warrantless seizure laws do not allow the police to reinterpret and broaden those laws according to officers' own perceptions of what is necessary to protect public safety. Misinterpretations of law by law enforcement officers is compounded when courts charged with presiding over such cases adopt the officer's interpretation without question. Failure of courts to correctly interpret and apply TC law leads to injustice and multiple other violations of citizen's rights as is demonstrated by this case. Practically every issue complained of in this appeal is founded on an incorrect interpretation of the law by Belcher and the COUNTY COURT. When

questioned, public officials refuse to identify the source of their power when enforcing TC law and refuse to express their interpretation of key provisions of this code such as precisely what activity is being regulated by this code or what physical territory is included within the territorial jurisdiction of this code. With a correct interpretation of the TC as a foundation, this case raises multiple constitutional challenges regarding the exercise of jurisdiction within the territory of a Union state and the limitations state and federal constitutions place on that power.

## STANDARD OF REVIEW

The standard of review for finding appellant guilty is an abuse of discretion standard. *Heine v. Texas Dep't of Pub. Safety*, 92 S.W.3d. 642, 646 (Tex. App. – Austin 2002, pet denied). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding principals. *Mercedes Benz Credit Corp. v. Rhyne*, 925 S.W.2d. 664, 666 (Tex. 1996). A trial court has no discretion in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d. 833, 840 (Tex. 1992). In short, the trial court has no discretion to misapply the law. Therefore, when a court incorrectly construes

or refuses to follow the law, or fails to correctly apply the law to the facts, the abuse of discretion standard essentially amounts to a de novo review. When the ruling turns on a question of law, such as the interpretation of a statue, the ruling is reviewed de novo. *Texas Dep't of Pub. Safety v. Nail*, 305 S.W.3d 673, 678 (Tex. App. – Austin 2010, no pet.). Under this standard, the court conducts an independent analysis of the record and gives no deference to the trial court's conclusions.

The standard of review in determining factual sufficiency of the evidence is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak, or so contrary to the overwhelming preponderance of the evidence. *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). In performing a de novo review, we exercise our own judgment and re-determine each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex.App – Houston [14th Dist.] 1996, no writ).

## ARGUMENT AND AUTHORITIES

Issue I.    <u>Belcher Did Not Have "Reasonable Suspicion" To Conduct A</u>

## Warrantless Seizure of Appellant

As the Tenth Circuit has explained, the relevant question in a case such as this is: "Against what interpretation of the law should [a court] assess the facts when deciding whether there was reasonable suspicion . . . to make a traffic stop?" *United States v. Nicholson*, 721 F.3d 1236, 1244 (10th Cir. 2013). Should a court assess the facts against the "correct interpretation of the law" or against whatever misinterpretation of the law an officer might reasonably have? For the reasons that follow, the reasonable suspicion inquiry requires courts to measure the facts against the correct interpretation of the law.

### Fourth Amendment Precedent, Tradition, And Purpose Require The Facts Known To The Officer To Be Measured Against The Correct Interpretation of The Law.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. "[S]topping an automobile and detaining its occupants constitute a 'seizure'" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Accordingly, stopping an automobile and detaining the driver "are unreasonable under the Fourth Amendment" unless the police

have "at least articulable and reasonable suspicion." *Id.* at 663; see also

*Ornelas v. United States*, 517 U.S. 690, 693 (1996) ("An investigatory stop

is permissible under the Fourth Amendment if supported by reasonable

suspicion.").

The U.S. Supreme Court's precedent dictates that reasonable

suspicion is an objective test. The test requires an officer to have "'a

particularized and objective basis' for suspecting the person stopped of

criminal activity." *Ornelas*, 517 U.S. at 696 (quoting *United States v. Cortez*,

449 U.S. 411, 417-18 (1981)). In *Whren v. United States*, 517 U.S. 806

(1996), the Supreme Court unanimously reaffirmed the need for objectivity

in assessing the reasonableness of a traffic stop, holding that an officer's

subjective reason for conducting a traffic stop is irrelevant to its legality. Id.

at 813. This holding was repeated by Justice Kagan in the Supreme Court

case of *Heien v. North Carolina*, 135 S.Ct. 530, 541 (2014).

The only sensible way to determine reasonableness is to measure

individualized suspicion "against the correct interpretation of the law, as

opposed to any other interpretation, even if arguably a reasonable one,"

*United States v. Nicholson*, 721 F.3d 1236, 1244 (10th Cir.2013). The

"essential purpose" of the reasonable suspicion standard, after all, is to

constrain "the exercise of discretion by government officials, including law

enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions." *Prouse*, 440 U.S. at 653-54 (citations and internal quotation marks omitted). It is arbitrary for officers to effectuate traffic stops when neither the facts known to them, nor any reasonable inferences, indicate anything other than wholly innocent conduct. Even when officers misinterpret the law entirely in good faith, a seizure on that basis is still indiscriminate insofar as it lacks any objective legal justification.

Tradition likewise supports evaluating reasonable suspicion with reference to the correct interpretation of traffic law. The Supreme Court has repeatedly recognized that post-Founding common law cases can reveal constitutional principles, for the common law generally developed in harmony with such principles. *See, e.g.*, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321-24 (2009) (inferring constitutional meaning from late nineteenth-century and early twentieth-century state-law cases); *Atwater v. City of Lago Vista*, 532 U.S. 318, 342-43 (2001) (same).

Under the common law, "[n]o right is held more sacred, or is more carefully guarded . . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392

U.S. 1, 9 (1968) (emphasis added) (quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)) (internal quotation marks omitted). Thus, although the common law has long protected an officer from tort liability "in every case where he act[ed] under a reasonable mistake as to the existence of facts," Restatement of Torts § 121 cmt. i (1934) (emphasis added), the common law has always presumed that officers know the law, and has held them liable in trespass whenever they make warrantless arrests based on incorrect interpretations of statutes.

As the first Restatement of Torts memorialized the rule: "[A]n officer is not privileged to arrest another whom he reasonably suspects of having committed an act which the officer, through a *mistake of law reasonable in one of his position*, believes to be a common law felony." Restatement of Torts § 121 cmt. i (1934) (emphasis added); *see also* Restatement (Second) of Torts § 121 cmt. i (1965) (reaffirming this rule). Indeed, the Restatement addressed the precise form of mistake at issue here, expressly foreclosing any exception for mistakes of law based on an ambiguous "statute . . . [that] is not judicially construed [contrary to the officer's view] until after the arrest is made." Restatement of Torts § 121 cmt. i; *see also id.* ("No protection is given to a peace officer who, however reasonably, acts under a mistake of law" of this type).

The Michigan Supreme Court's decision in *Malcomson v. Scott*, 23 N.W. 166 (Mich. 1885), illustrates this rule. There, an officer arrested the plaintiff on facts that did not constitute the charged crimes of larceny or embezzlement. The court held the arrest invalid, explaining that "[a]n officer of justice is bound to know what the law is, and if the facts on which he proceeds, if true, would not justify action under the law, he is a wrong-doer." *Id.* at 168. As that court continued: "[V]iolations of law by those who are appointed to protect instead of destroy private security, deserve no favor." *Id.*

English common law developed based on the same presumption. In *Carratt v. Morley*, (1841) 113 Eng. Rep. 1036, for instance, an arresting officer was held liable for false imprisonment based on his mistake of law when there was no jurisdiction to make the arrest. A treatise summarized the rule this way: If "the Court has no jurisdiction over the cause before it, the whole proceeding is bad, and any one who enforces the process of the Court therein will be liable to an action for false imprisonment; *for he is presumed to know the law* and therefore to be cognisant of the want of jurisdiction." 1 W. Blake Odgers & Walter Blake Odgers, The Common Law of England 481 (2d ed. 1920) (emphasis added) (footnote omitted). Though there was possibly an exception to this rule for officers acting under the direction of a

magisterial warrant, officers were entitled to no protection from liability when acting on their own. *Id.* at 481-82. Measuring facts against the correct interpretation of the law maintains the proper relationship between citizens and their government, as reflected in several doctrinal precepts.

First and foremost, *Whren's* anti-subjectivity rule gives officers "broad leeway" to conduct traffic stops regardless of whether their subjective intent corresponds to the legal justifications for their actions. *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). "But the flip side of that leeway is that the legal justification must be objectively grounded" in a correct interpretation of the law. *Id.* In other words, if officers can detain a motorist for any traffic violation, no matter how small and regardless of their subjective motives, they should not be able to detain a motorist when the observed facts, measured against the correct interpretation of the law, reveal only wholly innocent conduct.

Evaluating the legality of police officers' actions against the correct interpretation of the law also is consistent with the standard to which ordinary citizens are held. "[T]he background presumption" – fundamental to the administration of criminal law – is that "every citizen knows the law."

*Bryan v. United States*, 524 U.S. 184, 193 (1998). Accordingly, "the traditional rule" is that "ignorance of the law is no excuse." *Id.* at 196.

It takes little reflection to see the "fundamental unfairness" of holding citizens to that maxim "while allowing those entrusted to enforce the law to be ignorant of it." *United States v. Chanthasouxat*, 342 F.3d 1271, 1280 (11th Cir. 2003) (internal quotation marks omitted). Indeed, when a police officer drives as a citizen, he can be held accountable for any violations of the traffic code, no matter how reasonable any mistake he might make may turn out to be. It would be counterintuitive, to say the least, to presume that an officer knows the law in his capacity as a citizen, but to abandon that presumption when he acts to enforce the law. Put in more absolute terms, "failure to understand the law by the very person charged with enforcing it is not objectively reasonable." *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005).

Finally, various canons of statutory construction reinforce the principle that the government should not benefit from mistaken interpretations of ambiguous or otherwise confusing criminal laws. Under the "venerable rule" of lenity, *United States v. R.L.C.*, 503 U.S. 291, 305 (1992) (opinion of Souter, J.), "penal laws are to be construed strictly" in

order to prevent the government from restraining individual liberty absent clear authority to do so, *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820). Thus, "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347 (1971) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952)) (internal quotation marks omitted). And if a criminal statute is so indeterminate that "men of common intelligence must necessarily guess at its meaning," the law is constitutionally void for vagueness. *United States v. Lanier*, 520 U.S. 259, 266 (1997) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

The same canons apply to state statutes. In Texas, for example, any statute enacted in the exercise of the police power must be strictly construed so as to result in the least interference with personal liberty. And, of course, the void-for-vagueness doctrine applies equally to state laws. *See*, e.g., *Giaccio v. Pennsylvania*, 382 U.S. 399, 404-05 (1966). The COUNTY COURT's decision supports a holding that a police officer may act upon an unduly expansive interpretation of law, yet still act reasonably under the circumstances and is at odds with these principles of construction. To the

extent a traffic statute is ambiguous, the government's power to restrain individual liberty should shrink, not expand.

The COUNTY COURT resisted measuring reasonable suspicion against the correct interpretation of the law partly so that it could treat mistakes of law "the same" as mistakes of fact, which the Fourth Amendment tolerates so long as the mistakes are objectively reasonable. In contrast to factual inferences, legal analysis is not something that officers must do on the fly or that officers are better trained than courts to undertake. A traffic law, "unlike the case-by-case factual possibilities entailed in probable cause and reasonable suspicion assessments, has an ex ante epistemic baseline." Wayne A. Logan, *Police Mistakes of Law*, 61 Emory L.J. 69, 86 (2011) (footnote omitted). Here, for instance, the TC either requires "every" Citizen of Texas to register their private property as a "vehicle" or it only requires registration by "persons" who have purchased a "vehicle" in the last 30 days or are residents of this "state." Nothing an officer might suddenly confront in the field could affect that purely legal question. When it comes to legal assessments, ordinary people are not legal technicians either, and they are held responsible for the law as correctly interpreted. Thus, just as courts have long distinguished between criminal defendants' mistakes of fact and law and held them accountable for the

latter, *see Reynolds v. United States*, 98 U.S. 145, 167 (1878), so should they maintain this distinction when evaluating law enforcement's claims of reasonable suspicion. A refusal to excuse mistakes of law provides an "incentive to err on the side of constitutional behavior." *United States v. Johnson*, 457 U.S. 537, 561 (1982); see also *Davis v United States*, 131 S. Ct. 2419, 2435 (2011) (Sotomayor, J., concurring) ("[W]hen police decide to conduct a search or seizure in the absence of case law (or other authority) ... exclusion of the evidence obtained may deter" violations of law).

An individual officer's misinterpretation of a traffic law closely resembles the situation in Johnson. As in *Johnson,* 457 U.S. at 561, a misinterpretation of traffic code involves an officer on patrol taking an overly aggressive view of a legal issue on which "reasonable minds . . . may differ." *United States v. Davis*, 598 F.3d 1259, 1267 (11th Cir. 2010), aff'd, 131 S. Ct. 2419 (2011) (internal quotation marks and citation omitted). As the only three courts of appeals to have squarely considered the question (all in the context of evaluating the applicability of the good-faith exception to the exclusionary rule) have recognized, this is very different than relying on an explicit directive from a court or legislature. *Id.*; see also *United States v. McDonald*, 453 F.3d 958, 962 (7th Cir. 2006); *United States v. Chanthasouxat*, 342 F.3d 1271, 1280 (11th Cir. 2003); *United States v.*

*Lopez- Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000). And it is something worthy of deterrence – at least in the sense of deeming such seizures as unconstitutional.

Indeed, in a world in which police officers would be allowed to conduct traffic stops anytime state law could reasonably be interpreted to prohibit the conduct the officer observed, officers would be all but invited to read traffic statutes aggressively. Instead of trying to determine the best reading of the law, authorities wishing to vigorously enforce the law would be encouraged to identify the broadest possible range of plausible readings of any given traffic law, for such an approach would support traffic stops in the greatest number of cases.

Not only would this incentive be problematic on its own terms, but it also would threaten to put officers' interpretive practices at odds with well-established doctrines of strict construction, lenity, and vagueness. When officers confront ambiguous statutes on which they lack outside guidance, they should be encouraged to do exactly what other branches of the government must: construe ambiguous statutes narrowly, in favor of individual liberty. Only by measuring reasonable suspicion against the

correct interpretation of the law can the Fourth Amendment ensure these incentives are aligned.

Measuring reasonable suspicion against the correct interpretation of the law also encourages officers to take advantage of available tools to become more familiar with the law. Officers have a variety of means at their disposal to help them determine the meaning of traffic laws, including the extensive availability of targeted legal education at police training academies, increasingly powerful technology in officers' cruisers and pockets, and the ability to ask for clarifications from individuals trained in the law (such as local counsel or lawyers in an attorney general's office). Only by refusing to excuse officers' mistakes of law would officers be properly motivated to make use of these resources.

What is more, law enforcement agencies typically have unique relationships with lawmakers and access to the legislative process. *See, e.g.,* Rachel E. Barkow, *Administering Crime*, 52 UCLA L. Rev. 715, 728 (2005); Darryl K. Brown, *Democracy and Decriminalization*, 86 Tex. L. Rev. 223, 232 n.31 (2007). If police departments are struggling to determine the correct meaning of certain laws, the Fourth Amendment should encourage them to ask legislatures to clarify the statutes – not to eschew

such clarification for fear that removing ambiguity in traffic statutes will restrict their power.[3]

Measuring reasonable suspicion against the correct interpretation of the traffic code also avoids problematic consequences for law-abiding citizens. The Supreme Court has recognized, however, that citizens have a "private interest in avoiding" traffic stops, *Whren v. United States*, 517 U.S. 806, 817-18 (1996), because such seizures are a substantial infringement on one's liberty. A traffic stop constitutes a "possibly unsettling show of authority," *Delaware v. Prouse*, 440 U.S. 648, 657 (1979), and involves "the loss of our freedom to come and go as we please without police interference," *Navarette v. California*, 134 S. Ct. 1683, 1697 (2014) (Scalia, J., dissenting). Traffic stops moreover "create substantial anxiety," "interfere with freedom of movement, are inconvenient, and consume time." *Prouse*, 440 U.S. at 657.

---

[3] This is not to say that the onus to generate unambiguous laws falls primarily on law enforcement agencies, or on this Court through the tool of constitutional jurisprudence. It is primarily the job of legislatures to enact clear laws. At the same time, "[t]he less the courts insist on precision, the less the legislatures will take the trouble to provide it." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 301 (2012).

Appellant's Brief
No. 05-15-00148-CR

More seriously, a simple mistaken traffic stop can escalate into a series of increasingly invasive acts, as has been demonstrated in recent cases throughout the Union, including Texas. Police effectuating traffic stops may conduct protective pat-downs, *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), which this Court has recognized "must surely be an annoying, frightening, and perhaps humiliating experience," *Terry v. Ohio*, 392 U.S. 1, 24-25 (1968). They also may request consent to conduct consensual searches, which, as this case demonstrates, can be difficult for motorists to refuse. Officers who conduct traffic stops also have the discretion to arrest offending motorists, *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), which can then lead to involuntary searches of the person's possessions, *United States v. Robinson*, 414 U.S. 218 (1973), strip searches, *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510 (2012), and possibly even the collection of DNA samples, *Maryland v. King*, 133 S. Ct. 1958 (2013).

It would be much more difficult – indeed, sometimes downright impossible – for people to avoid being exposed to the possibility of traffic stops if a mistake of law could supply reasonable suspicion. Traffic laws are classic malum prohibitum statutes; they typically proscribe conduct not because it is inherently blameworthy but rather to further more regulatory objectives. That being so, the main way for citizens to avoid tripping over

such statutes is to familiarize themselves with the traffic code. It is the Citizen's responsibility to know the law.

Yet under the decision of the COUNTY COURT, Citizens seeking to avoid exposing themselves to the burdens of traffic stops would have to discern not only their legal obligations but also some unidentified sphere of wholly innocent activity that a police officer believes is also prohibited. Whatever precise formulation would apply here, there can be no doubt that the scope of conduct covered by "reasonable" interpretations of traffic codes would be much broader than the scope of conduct covered by correct interpretations of those laws.

That being so, officers would have much broader discretion to initiate traffic stops, and citizens would be forced to give a wide berth to the traffic code to account for this expansion of authority. Even more troubling, officers would sometimes have the power to stop a motorist no matter what the motorist does. When a driver has only two choices and the governing law is capable of being reasonably read to prohibit either choice, an officer could stop the driver either way.

Were this Court to adopt the position that an officer can make a reasonable mistake about the very existence of a law, the citizen's quandary

would only deepen, for now he would have to hypothesize about the non-existent laws that might reasonably exist, but do not. This was the case in *Travis v. State*, 959 S.W.2d 32 (Ark. 1998), in which the court held that a traffic stop for failing to display an expiration date sticker on a license plate comported with the Fourth Amendment, even though state law required no such sticker. Id. at 33-35. Surely it is unfair to require citizens seeking to steer clear of police contact to imagine what an officer might reasonably believe should be against the law but is not.

In Texas, as elsewhere, it is first and foremost "the legislature's job" to decide which activities are unsafe and thus should be prohibited, not a police officer's. And the Texas Legislature has squarely addressed what entities are required to register their property as "vehicles" and display license plates. Especially when a legislature has considered and resolved an issue as directly as this, the responsibility of law enforcement is to learn and apply what the statute provides, not reinterpret and broaden the law according to officers' own intuitions about what they think would best protect public safety.

At bottom, this case involves a simple proposition: This Court should demand of the officers who seized Appellant exactly what the officer

intended to demand of him as a citizen – knowledge of the law. Anything less would undermine long- settled relationships between the people and their government. It would also destabilize the Supreme Court's carefully delineated Fourth Amendment doctrine protecting fundamental rights from remedies. There is no good reason to inflict such damage upon our constitutional structure.

Applying the principals thus enunciated to the instant case, Appellant challenges the reasonableness of his seizure under the Texas Constitution, Art. I, § 9, Code of Criminal Procedure, Chapter 14 and the U.S. Consitution, Fourth Amendment. Appellate argued that Belcher's conclusion that appellant was required to "register" his private property as a "vehicle" and display STATE OF TEXAS issued license plates on it was not supported by the TC.

TC §502.040(a) is the section that expresses what entities are required to register their private property as a "vehicle." It states I part:

> "Not more than 30 days after purchasing a vehicle or becoming a resident of this state, the owner of a motor vehicle, trailer, or semitrailer shall apply for the registration of the vehicle for:"

TC § 502.493(a) is the section that expresses the offense of failure to display registration insignia and states in part:

Appellant's Brief
No. 05-15-00148-CR

"A person commits an offense if the person operates on a public highway during a registration period a motor vehicle that does not properly display the registration insignia issued by the department that establishes that the license plates have been validated for the period."

TC §504.943(a) expresses the offense for failing to display license plates and states in part:

"Except as provided by Subsection (b), a person commits an offense if the person operates on a public highway, during a registration period, a motor vehicle that does not display two license plates that:"

These TC provisions establishes the requirements for registration, displaying registration insignia, license plates and TC offenses under those sections. In order to support BELCHER's suspicion that appellant was required to display license plates on his private property, prior to seizing Appellant, she would have to possess specific knowledge that appellant was a "person," who had purchased a "vehicle" in the "thirty days" prior to this transaction or that he was a "resident" of the "state". Belcher's suspicion was based solely on her visual observations of no license plate and her interpretation of the TC. This alone does not support reasonable suspicion to believe that Appellant was "required" to register his private property and display license plates. Without specific articulable facts that appellant met one of the requirements for registration, Belcher was without a legal or factual

basis to support her suspicion that appellant was required to register and display license plates.

A recent United States Supreme Court opinion specifically addresses the standard to be applied in determining the reasonableness of a police officer's observation that he has witnessed a violation of law in the case of *Heien v. NORTH CAROLINA*, 135 S.Ct. 530 (2014). Appellant Heien was challenging the constitutionality of his seizure under a North Carolina traffic statute by a Surry County Sheriff's Deputy named Darisse. Darisse initiated the seizure when he observed that one of appellant's two stop lamps was not functioning properly. Darisse concluded that he had witnessed a violation of law and conducted a warrantless seizure of Heien. The seizure led to a search of Heien's car, to which Heien consented, and resulted in the discovery of cocaine. Heien was charged with trafficking in cocaine and he sought to suppress the evidence because he claimed the seizure was unreasonable and violated the Fourth Amendment.

Heien argued that Darisse made a mistake of law, when he concluded that he had witnessed a violation of law. Heien argued that this mistake of law resulted in an unconstitutional seizure and discovery of the cocaine should be suppressed. The trial court found the seizure reasonable and convicted Heien. The North Carolina Court of Appeals reversed, finding the seizure

unreasonable. The North Carolina Supreme Court reversed again, finding the seizure reasonable. The U.S. Supreme Court affirmed the decision of the North Carolina Supreme Court. In finding that Darisse's's stop was based on reasonable suspicion. The Court stated the following:

> "The critical point is that the statute poses a quite difficult question of interpretation, and Sergeant Darisse's judgment, although overturned, had much to recommend it. I therefore agree with the Court that the traffic stop he conducted did not violate the Fourth Amendment. ..." *Heien v. NORTH CAROLINA, 542.*

Justice Kagan, writing in a concurring opinion, in which Justice Ginsberg joined, stated the following:

> "A court tasked with deciding whether an officer's mistake of law can support a seizure thus faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not."

The Supreme Court found North Carolina statutes could be read to support Heien's interpretation that he was required to have only one stop lamp. However, it was also reasonable for Darisse to believe that a stop lamp was included in the term "rear lamps," and rear lamps were required by another subsection to be in working order. Darisse's seizure of Heien was found to be based on reasonable suspicion because an examination of the relevant law

revealed there was statutory authority to Darisee's interpretation of what constituted a violation of the law. Many of the facts leading up to the seizure in the Heien case are consistent with the facts of Appellant's case. Both cases involve the enforcement of Uniform Traffic Laws. The territorial jurisdiction of these traffic laws is a fictional federal territorial "State" within the exterior limits of the state of North Carolina and the state of Texas, both states in the Union. North Carolina General Statutes §20-4.01(45); TC §521.001(a)(8). Both cases involve warrantless seizures based only on a visual observation made by the officers. Both officers concluded they had witnessed a violation of the law. Neither officer had specific information about Heien or Appellant prior to their seizures. The question raised by Heien and now by Appellant; were the officers' interpretation of law supported by the actual law?

On cross examination, Belcher testified as follows (RR_Vol. 4, 36:13-37:3):

Q.    "Officer Belcher, lets go back to the moment just before you stopped me. Did you know anything me?

A.    No.

Q.    Did you know my name?

A.    No.

Q.    Did you know whether or not I had bought a motor vehicle in the

last 30 days?

A.    No.

Q.    Did you know whether or not I was a resident of the state?

A.    No.

Belcher went on to testify that she believed Appellant was a "person" as defined in the TC and more specifically, "an individual." When Belcher was asked what an individual was, she responded a "person." When asked if she had been instructed on how to use the Code Construction Act, to interpret the TC, she responded, "No, I'm not aware of that." When asked about her interpretation of "person," "vehicle," and "motor vehicle," Belcher made circular arguments that do not comport with the actual law (RR_Vol._4, 37:4-45:22). Belcher also testified that she stopped appellant because he did not display license plates as required by law.

When asked about the TC requirements for registration, Belcher's interpretation was again not supported by the actual law, and she once again admitted that she did not know whether or not Appellant had purchased a "motor vehicle" in the last thirty days or that Appellant was a "resident" of the "state" (RR_Vol._4 46:10-57:19). Belcher was not able to articulate why she concluded Appellant was "required" to "register" his private property under the TC. She stated she did not have to know Appellant was required to register

in order to conclude that he specifically was required to display license plates (RR 52:20-53:25). Belcher's interpretation of the TC puts the offense of not displaying license plates, TC §504.943, the statue under which she seized Appellant, before the requirement to register, TC §502.040(a), which authorizes the issuance and placement of license plates, TC §504.010. Belcher's testimony that she did not have to know that Appellant was required to register before she could conduct a warrantless seizure is contrary to law and all warrantless seizure authority.

When asked a series of questions regarding the definition of the term "state" as used in the TC to define the territorial jurisdiction of this code, she testified the term "state" as used in the definition of "state" in the TC and Gov.C., means "Texas." Belcher could not support her interpretation with any authority (RR_Vol._4, 64:25-74:13). Belcher testified that her interpretation of the term "State" was based on her training and common knowledge. Unfortunately, her interpretation is not in accord with the definition expressed by the legislature. The legislature's definition controls in this case.

Unlike Darisse, who cited sections of the North Carolina statutes to support his conclusion that he had witnessed a violation of law, Belcher and STATE OF TEXAS are unable to cite any provision of the TC that supports her conclusions that Appellant met any of the conditions of TC §§502.040,

Appellant's Brief
No. 05-15-00148-CR

504.010(a) or 504.943(a) and was required to register his private property as a "vehicle" and display license plates. Without knowledge of specific articulable facts about Appellant, prior to the seizure, Belcher's suspicions regarding Appellant were unreasonable. A seizure made without reasonable suspicion is a violation of the Texas Constitution, Art. 1 §9, the U.S. Constitution, Fourth Amendment and C.Crim.Proc. Chap. 14.

The standard applied in the Heien case for determining the reasonableness of an officer's conclusion that he has witnessed a violation of law was utilized a few months later in the case of *Northrup v. CITY OF TOLEDO POLICE DEPARTMENT*, UNITED STATES COURT OF APPEALS, No. 14-4050 (May 13, 2015). While the facts of the case are different, this case, like the instant case and the Heien case, involved a visual observation made by a CITY OF TOLEDO POLICE OFFICER, Bright, who concluded that based on his observation he had witnessed a violation of law. Bright observed Northrup carrying a hand gun, holstered on his side and concluded this act was a violation of Ohio law. Bright seized Northrup without a warrant. After disarming Northrup, putting him in handcuffs and placing him in the back seat of his patrol car, the officer was able to identify Northrup. Bright discovered that Northrup had an open carry permit making his carrying of the firearm legal. Bright cited Northrup on another charge that was later

dismissed.

Northrup sued Bright, another officer Ray and the CITY OF TOLEDO POLICE DEPARTMENT, in FEDERAL DISTRICT COURT. Northrup claimed violations of several of his rights protected by certain provisions of the Federal Constitution and other state charges. The DISTRICT COURT permitted Northrup's Fourth Amendment and state-law claims against Bright and Ray to go to trial. Bright appealed the DISTRICT COURT's decision to the COURT OF APPEALS. In the COURT OF APPEALS, officer Bright claimed that he had a "reasonable suspicion" that Northrup was engaged in criminal activity based on two undisputed facts: (1) Northrup was visibly carrying a gun in his holster, and (2) Bright was responding to a 911 call. That reasonable suspicion, Bright claims, justified his disarmament, detention, and citation of Northrup. Ultimately, Ohio law did not support Bright's conclusion that he had witnessed a violation of law. The court made the following statement on the issue:

> "While the dispatcher and motorcyclist may not have known the details of Ohio's open-carry firearm law, the police officer had no basis for such uncertainty. If it is appropriate to presume that citizens know the parameters of the criminal laws, it is surely appropriate to expect the same of law enforcement officers—at least with regard to unambiguous statutes. *Heien v. North Carolina*, 135 S. Ct. 530, 540 (2014)."

Unlike the Heien case, where the North Carolina statutes supported Derasee's interpretation that he had witnessed a violation of law, the Ohio law did not support Bright's interpretation that he had witnessed a violation of law. In Appellant's case, the TC does not support Belcher's interpretation of these provisions. TC Chapters 502 and 504 establish the requirements for registration and license plates. Belcher's seizure of Appellant was unreasonable because it was based on a mistake of law and not particularized reasonable suspicion. Belcher knew nothing about Appellant at the time of the seizure that supported her suspicion that she had witnessed a violation of law. In Texas, there can be no warrantless arrest absent statutory authority. *State v. Steelman*, 93 S.W.3d. 102, 107 (Tex.Crim.App. 2002). Defendant's rights protected by the Fourth Amendment, the Texas Constitution, Art. I. §9, and C.Crim.Proc. Chapter 14 were violated as a result of this warrantless seizure. Appellant challenged the reasonableness of his seizure prior to trial on the merits (CR_270-272). Belcher confirmed the unreasonableness of the seizure when she testified regarding the reasons for her action. This conviction should be reversed and the case dismissed.

Issue II.     <u>The trial JUDGE erred as matter of law, when she refused to disqualify herself.</u>

The COURT erred, as a matter of law, when the trial JUDGE refused to

disqualify herself from hearing this case over Appellant's objections (CR_237-251). In this TC case, JUDGE Mason sits as a "State judge" "of this state" under TC §§521.001(8) & (8a)(A). A judge is merely an officer of the court, not the court itself. "State" in the TC is a federal territorial "state." "State" is a very important term in this code because it expresses the extent of the territorial jurisdiction of this code. While the term "state" may commonly be understood by the average Citizen to mean a state in the Union, the legislature has provided a specific definition of this term in this code. TC §§521.001(8), 541.002(5), 601.002(11) and Gov.C §311.005(7) are examples of how the legislature has chosen to define this term in these codes. "State" is not a state in the Union, therefore a TC "State judge" is not exercising an office under the Constitution of Texas, Art V.

"State" is not used in the TC and Gov.C. in the same since that "state" is used in the Constitution of the United States of America. In the case of *Hepburn & Dundas v. Ellzy,* 6 U.S. 445, 452 (1805), the U.S. Supreme Court answered the question whether a citizen of the District of Columbia could maintain an action in the circuit court of the United States against a citizen of the Commonwealth of Virginia. The answer depended on the act of Congress describing the jurisdiction of that court. That act gave jurisdiction to the circuit courts in cases between a citizen of the state in which the suit is

brought and a citizen of another state. Congress did not define state in the act. To support the jurisdiction in such a case, therefore, it must appear that Columbia is a state. The Supreme Court found the circuit court did not have jurisdiction of the suit. The circuit court found that:

> "On the part of the plaintiffs, it has been urged that Columbia is a distinct political society, and is therefore "a state" according to the definitions of writers on general law."

> "This is true. But the act of Congress obviously uses the word "state" in reference to the term as used in the Constitution, it becomes necessary to inquire whether Columbia is a state in the sense of that instrument. The result of that examination is a conviction that the members of the American confederacy only are the states contemplated in the Constitution."

The circuit court found the District of Columbia is not a state in the Union. In the instant case, the legislature defined the term "State." When the legislature defines a term, it is presumed to say what it means and the courts cannot add to or take away from that definition. In the instant case, the legislature used the term "state" to define "state." This could easily confuse the average Citizen if he were not aware that "state" is a general term within the meaning of Gov.C. §312.002(b) and has a broad meaning that is restricted by the following rule of construction.

> "Where an enumeration of specific things is followed by some general word or phrase, such general word or phrase, under the ejusdem generis rule of construction, refers to things of the same kind as those specifically mentioned." *Galveston, H. & H.R. Co.*

Appellant's Brief
No. 05-15-00148-CR

*v. Anderson* (Civ. App. 1921) 229 S.W. 998; *Amplifone Corp. v. Cameron County* (Civ. App. 1979) 577 S.W.2d. 567, 570.

Territories, possessions, districts, commonwealths and insular possessions of the United States, the District of Columbia and the Commonwealth of Puerto Rico are not states in the Union, but are defined by the legislature as "states" in the TC and Gov.C. These expressed territories are subject to the exclusive legislative authority of the United States under the U.S. Constitution, Art. I. §8, cl. 17 and Art. IV, §3, cl. 2. These clauses of the federal constitution provide for the territorial powers of the United States. States in the Union, such as Texas are not subject to the exclusive jurisdiction of the United States. *United States v. Bevans*, 16 U.S. (3 Wheat.) 338, 350-351. (1818).

It is clear the legislature used the term "state," in these codes to designate federal territorial "states." In a geographic sense, a federal "state" is comprised of federal territory located within the exterior boundaries of Texas that is subject to the exclusive jurisdiction of the United States.

Evidence of the federal territorial nature of these codes is also expressed in the use of FRNs as the money of accounts of the courts. FRNs are not lawful money for states in the Union when exercising their general powers. This is instructive because FRNs are not "money" as the term money is used in the U.S. Const., Art. I, §10, cl. 1. This clause expressly forbids states in the

Appellant's Brief
No. 05-15-00148-CR

Union from making any thing but gold and silver coin a tender in payment of debts. FRNs are neither gold nor silver coin and are not backed by gold or silver coin. Gold and silver coin is the only lawful tender in Texas when she is enforcing her general laws. *Ogden v. Slade,* 1 Tex. 13, 14 (1846). FRNs are evidence of debt of the United States government acting in its proprietary nature as a body corporate to the privately owned Federal Reserve Bank. 12 U.S.C. §411 (CR_242-243). When the federal government borrows FRNs from the Federal Reserve Bank, it acts as any other corporate body in a commercial transaction.

When the federal government makes a grant of federal funds to Texas to enforce its territorial laws, the transaction is a private contract between two Sovereigns acting as proprietary corporate bodies. State officials thus cannot consent to the enlargement of the powers of Congress beyond those enumerated in the Constitution. Indeed, the facts of this case raises the possibility that powerful incentives might lead both federal and state officials to view departures from the federal structure to be in their personal interests. *New York v. United States Et. AL.,* 505 U.S. 144, 182 (1992).

The COUNTY COURT is not acting as a de jure court of Texas, enforcing its general laws in a TC case. "State judges" exercise a federal administrative jurisdiction of a local authority (see TC §§541.002(3), applying

the territorial laws of a federal "state." TC §§541.002(2) & 521.001(8-a). Since TC fees, fines and penalties are payable only in FRNs, the COUNTY COURT must be acting as a federal territorial court. "State judges" under the Gov.C. are exercising federal offices and are not qualified to hold offices in the de jure government of Texas. Separation of powers between state and federal governments prohibit holding office in both governments simultaneously.

If the COURT is purporting to act as a court of justice, exercising the judicial power of Texas, FRNs as the money of accounts creates a defect in the operation of the courts and they become de facto and not de jure. JUDGE Mason, sitting as a "State judge" is a de facto judge, whose status was challenged as such (CR_231-245, 264, 354-356), therefore the de facto officer doctrine does not apply. Mason is not qualified to preside over a case affecting appellant's private rights absent proof of Appellant's consent.

When Appellant attempted to find out the nature of this proceedings and her status, Mason stated she was neither de jure nor de facto; she was statutory (RR_Vol._2, 6:20-9:14). Mason was correct when she said she was a statutory judge. However, she is de facto because she pretends to be acting in a TC case as a judge exercising the general judicial power of Texas, as a state in the Union, when in fact she exercises federal territorial power.

There was no allegation before the COUNTY COURT establishing the nature of the relationship between Appellant and "State" that would make this exercise of administrative jurisdiction, reasonable. Mason was not qualified to preside over this case and any judgment entered by her is void and should be reversed.

Issue III.    The COURT erred as a matter of law in applying the TC as the choice of law.

The COURT found that appellant was subject to the TC as the choice of law in this case. Appellant expressly objected to this choice of law (CR_264-267, 356-357) because the TC was adopted as a private or special law of the Texas legislature acting in its proprietary nature as a corporate body and a federal "state." Appellant has consistently pled in his verified pleadings that he was not a citizen, resident or inhabitant of the TC "State" (CR_259-260, 267-268, 369,). Appellant pled that he had committed no act within the territorial jurisdiction of the TC nor was he engaged in any activity regulated by the TC (CR_268-270, 357-358). As a Citizen of Texas, domiciled in Texas, appellant is subject only to the general laws of his domicile, absent a showing of his voluntary consent. Appellant is not subject to the exclusive legislative jurisdiction of the United States. No proof of defendant's voluntary consent to

be subject to this code was entered into the record.

Appellee did not rebut by verified pleading, appellant's allegation of appellee's status in this TC case (CR_232-234, 259-260). Failure of appellees to rebut the allegations of status and capacity by verified pleading is an admission of the alleged facts and a waiver of any objection on appeal. See Tex.R.Civ.Proc., Rule 93; *Pledger v. Schoellkopf*, 762 S.W.2d. 145-146 (1988); *Weatherly v. Martin*, 754 S.W.2d. 790, 792-793 (1988); *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d. 47, 56 (Tex. 2003). Appellant is not a citizen, resident or inhabitant of the TC state and did not consent to the choice of law in this case. The COURT erred as a matter of law when it applied this choice of law to appellant over his objections and without his consent. This error was harmful to appellant and should be reversed.

Issue IV.    The TC "as applied" to appellant's private property and activities, violated the Texas Constitution, Art. III., §35.

When reviewing an attack upon the constitutionality of a statute, we begin with the presumption that the statute is valid and the legislature has not acted unreasonably or arbitrarily. *Luquis v. State*, 72 S.W.3d 355, 365 n.26 (Tex. Crim. App. 2002); *Ex parte Ports*, 21 S.W.3d 444, 446 (Tex. App.--San Antonio 2000, pet. ref'd). The party challenging the

Appellant's Brief
No. 05-15-00148-CR

constitutionality of a statute bears the burden of establishing that it is unconstitutional. *Ports*, 21 S.W.3d at 446. Due process requires criminal laws to be defined so that (1) fair notice is given to ordinary persons as to what conduct is forbidden; and (2) definite standards are established to prevent arbitrary and discriminatory enforcement by police, judges, and juries. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Appellant has challenged and continues to challenge the constitutionality of the TC, "as applied" to appellant (CR_289-290, 362-363). In this case the PROSECUTOR is attempting to apply provisions of the TC to activity that is not expressed in the title of the act. This violates the Tex. Const., Art. III §35. "Transportation" is the expressed subject matter of the TC.[4] This code cannot be applied to any activity outside the expressed subject matter of "transportation." This charging instrument contains no specific allegation that appellant was using his private property as a "device" in or by which a person or property may be transported or drawn on a public highway of a TC "state."

This application of the TC to appellant, over his objections and without his consent, violates the Texas Constitution, Art. III, §35(a). This constitutional mandate provides that bills contain only one subject which must

---

[4] Acts 1995, 74th Leg., Ch. 165, S.B. No. 971, 1995. "An act relating to the adoption of a nonsubstantive revision of the statutes relating to **transportation**…" (emphasis added).

be expressed in the title of the bill. Application of this bill to any activity other than "transportation" is a violation of this provision of the Texas Constitution.

Issue V.    Appellant committed no act within the territorial jurisdiction of the TC.

The COUNTY COURT found that it had territorial jurisdiction over the location of this transaction and that appellant had committed an act or omission within the territorial jurisdiction of the TC. Appellant objected to the exercise of territorial jurisdiction of the COUNTY COURT on numerous grounds (CR_268-270, 357-358). The geographic territory that comprises the territorial jurisdiction of the TC has been expressly defined by the legislature in the term of art "state." The territories defined as "states" in the TC are federal territories subject to the exclusive legislative jurisdiction of the United States pursuant to U.S. Const., Art. I, §8, cl. 17 & Art. IV, §3, cl.2. The expressed territorial jurisdiction of the TC does not include territory under the exclusive jurisdiction of states in the Union, such as the Texas. The charging instrument in this case does not include an allegation that appellant committed any act within the territorial jurisdiction of "state" (CR_11). Appellant has committed no acts within the territorial jurisdiction of this Code and there are no reliable allegations or evidence to support a finding that he has. The

Appellant's Brief
No. 05-15-00148-CR

COUNTY COURT, sitting as a federal territorial court, applying federal territorial law, lacked territorial jurisdiction of the location of the transaction in this case. Appellant's activities occurred in the city of Frisco, county of Collin, state of Texas. This location is territory within the exclusive jurisdiction of Texas. Absent an allegation and evidence that Appellant has consented to this exercise of extra-territorial jurisdiction, there is no authority to do so. Territorial jurisdiction of the location of the alleged offense is a prerequisite to the exercise of jurisdiction and lack of territorial jurisdiction renders any judgment entered therein absolutely void. This case should be reversed and dismissed.

Issue VI.   The COUNTY COURT lacked subject matter jurisdiction of this case.

The COURT erred when it found that its subject matter jurisdiction had been properly invoked in this case. Appellant objected to the subject matter jurisdiction of the COURT prior to the trial on the merits (CR 283-285, 361-362). Appellant is alleged to have operated a motor vehicle without registration and license plates (CR 11). These allegations alone are insufficient to invoke the subject matter jurisdiction of this COURT because it lacks many necessary allegations.

This case is predicated on the TC. "Transportation" is the subject matter of this code. Appellant has consistently rebutted his participation in any such activity. Failure to allege that appellant was engaged in the subject matter of this case fails to invoke the subject matter jurisdiction of the COURT and the only lawful action upon proper objection (CR 11), is amendment of the charging instrument to include the required allegations or dismissal.

The charging instrument does not allege an act of interstate commerce; that appellant was using his private property as a "device" to transport or draw persons or property on a highway in a TC state; that appellant purchased a vehicle in the 30 days prior to this transaction; or that appellant is a "person" or a "resident of this state." In order to invoke the jurisdiction of a court, the charging instrument, when challenged, must allege all the essential elements of the offense. The issue of the necessity of a proper charging instrument was addressed in the case of *Ex parte Cannon*, 546 S.W.2d. 266, 269-270 (1976). The court made the following statements in support of their decision:

> "The indictment being fundamentally defective, and not alleging an offense against the laws of Texas, same is insufficient to support a conviction, and therefore this conviction is void. See *Standley v. State,* supra; *Ex parte Roberts,* supra…"

> Because judicial action without jurisdiction is void, it cannot be waived and may be raised at any time. "Although most rights and procedural matters may be waived, jurisdictional matters may not be." *Casias v. State,* Tex.Cr.App., 503 S.W.2d 262.

When substantive challenges to the complaint are made before trial, this holding is not waived. *See* Texas Const. Art. 5 §12.b; C.Crim.Proc. Art. 1.14. When the People amended the Constitution of Texas regarding charging instruments in 1985, it was their intent to prevent those convicted of crimes from exposing for the first time on appeal the failure of a charging instrument to allege an essential element of the crime. Code. Crim. Proc. Art. 1.14 requires that a defect in the substance or form of a pleading must be objected to prior to a trial on the merits. Appellant has consistently challenged the charging instrument in this case (CR_283-285, 368-369). The DISTRICT ATTORNEY chose not to respond to appellant's challenges or to amend the charging instrument to include any omitted facts. The face of the charging instrument in this case alleges only naked legal conclusions rather than specific facts regarding appellant or his property; the legal status of either; their relationship to the UNITED STATES or the STATE OF TEXAS/CITY OF FRISCO; how appellant or his property met the requirements of the law for registration of "vehicles" and displaying license plates; or how appellant was engaged in or using his private property for transportation purposes within a TC "state."

Issue VII.   The COURT lacked personal jurisdiction of Appellant.

Appellant objected to personal jurisdiction in his motion to quash the complaint (CR_267-268, 371-372). A challenge to personal jurisdiction of the accused is a jurisdictional challenge and must be proven on the record before the Court can proceed to the merits of the case. The COURT erred when it found that appellant was a "person" as that term is defined in the TC. The allegations in this charging instrument apply only to "persons" as defined in the TC. In *Barber v. State*, 191 S.W.2d. 879, 880 (1945), the Court of Criminal Appeals found the offense charged applied only to licensees. Therefore the complaint had to allege and prove that Barber was a licensee at the time of this transaction. In the instant case, the charging instrument had to allege and the PROSECITOR had to prove with admissible evidence that appellant had the status of "person" on the day of the alleged offense.

If appellant does not have the status "person," it is impossible for him to violate provisions of the TC. There was no allegation in the charging instrument that appellant is a "person" (CR 11). There was no evidence presented during the trial that appellant was a "person."

Appellant also challenged the service of the charging instrument in this case. Per *Pennoyer v. Neff*, 95 U.S. 714 (1877), service of process beyond the border of a state is of no authority. Service of this process was in the

exclusive territory of Texas and beyond the borders of "State" as defined in the TC. Service of process outside the territorial jurisdiction of "State" cannot confer personal jurisdiction over appellant without his expressed consent. *see International Shoe Co. v. Washington*, 326 U.S. 310 (1985). Personal jurisdiction is a necessary element of jurisdiction for a court to issue a valid judgment. A judgment issued without personal jurisdiction is void. The order of conviction by the COUNTY COURT is void and should be reversed and the case dismissed.

Issue VIII.    The CLERK had no standing to act as affiant on a charging instrument.

    Standing is an essential element of subject matter jurisdiction and must be proven when challenged. Appellant challenged the standing of the CLERK of the CITY OF FRISCO MUNICIPAL COURT to bring this charge against him (CR 282-283, 368-369). The CITY ATTORNEY or his deputy are the only OFFICERs authorized to conduct prosecutions in the CITY OF FRISCO MUNICIPAL COURT. See C.CrimProc., Art. 45.201. The CLERK of the MUNICIPAL COURT is not an OFFICER in the CITY ATTORNEY's office. The duties of a CLERK, acting under the Gov.C, Chap. 30 do not include acting as the affiant on a charging instrument charging a Citizen of Texas with

an offense.

C.Crim.Proc. Art. 45.019(e)(2) authorizes a complaint to be sworn before a CLERK of the MUNUCIPAL COURT. A complaint sworn "before" a CLERK is not the same as a complaint sworn to "by" a CLERK. There is no expressed authorization in any Texas law for a CLERK of the CITY OF FRISCO MUNICIPAL COURT to act as an agent of the CITY ATTORNEY's office and be the affiant on a charging instrument charging appellant with the commission of an offense. Charging an offense is a prosecutorial function. It is not a delegated duty of an OFFICER claiming to be a CLERK. The CLERK is only competent to administer oaths made before them by other competent OFFICERs in a TC case. If the CLERK acts as the affiant, the CLERK is exercising a power delegated to the executive branch of government. If the CLERK is claiming an office within the judicial branch of government, participation in a charging instrument as the affiant is a violation of the separation of powers between the branches of state government. *see* Tex. Const., Art. II, §1.

Appellant would also ague that the CLERK in this TC case is actually exercising a Gov.C. office within a federal territorial state as part of a "local authority." The Gov.C. is not a general law of the de jure government of Texas. This is apparent by the definition of the territorial jurisdiction of this

code as defined by the term "state" in the TC and the Gov.C. These are special or private laws of the Texas legislature acting in its proprietary nature as a corporate body and a federal territorial state. *see* Texas Rules of Civil Procedure, Rule 53. One who exercises a Gov.C. office is exercising an executive office within the federal government. Exercise of this federal office by one purporting to act as a judicial office of Texas violates the separation of powers between the governments of Texas and the United States. *See* U.S. Const., Arts. I, II and III; Const. of Texas, Art. II, §2; *Younger v. Harris*, 401 U.S. 37, 44-45; *Prince v. United States*, 521 U.S. 898, 918-922 (1997). Exercise of this federal office by one purporting to exercise an office within the judicial branch of government also violates the separation of powers between the three branches of the federal government. *see* U.S. Const., Arts. I, II and III.

Appellant would also argue that the charging instrument is not a valid charging instrument (CR_11) because it is attested to by a court CLERK, who is not a member of the PROSECUTOR's office. It is based on information provided by Belcher's unverified report. While the charging instrument in this case is titled "complaint," it is in the nature of an information. *see* C.Crim.Proc. Art. 21.21.

Informations are valid, only when supported by the sworn affidavit of a

credible person. This alleged complaint is not supported by the sworn affidavit

of any credible person. The charging instrument filed in this case is not

sufficient to meet the constitutional requirements of an instrument used to

charge appellant with a crime and put in jeopardy his freedom and his

property. The COURT erred in finding that the CLERK had standing to bring

this charging instrument.


Issue IX.    <u>The charging instrument was insufficient to give appellant</u>

<u>constitutional notice of the cause and nature of the accusation</u>

<u>against him.</u>

The record contains numerous express declarations establishing

appellant's status in this case. These declarations have not been rebutted by

verified pleading. Appellant made specific challenges to the sufficiency of

the constitutional notice given in the charging instrument in his motion to

quash the complaint (CR_278-283, 359-361). The Constitution of Texas,

Article I, §10 and the U.S. Const., Amendment VI., requires that a complaint

charging appellant with an offense give him adequate notice of the cause and

nature of the allegation on which to prepare a defense. The charging

instrument in this case fails to provide appellant with sufficient notice to know

upon what theory the PROSECUTOR would rely for conviction (CR_11).

As argued in Issue I, TC §502.040 is the section that establishes the requirements for registration. TC §502.473 and 504.943 are the sections that define the alleged offenses. The complaint fails to allege that appellant had purchased a "vehicle" less than 30 days prior to this transaction or that appellant is a "resident of this state." The charging instrument failed to allege why Appellant was required to register and display license plates. The charging instrument and these TC sections, use terms of art that are statutorily defined such as "person," "operator," "vehicle," "motor vehicle," "drive," "state," "resident," and "public highway." Many of these terms are defined by statute in the TC using multiple other terms that are defined by statute. These multiple definitions create multiple theories upon which appellant might be convicted.

With so many different combinations of theories the PROSECUTOR could attempt to prove for purposes of conviction, it is impossible for appellant to know upon what theory the PROSECUTOR would rely and therefore impossible for Appellant to prepare a defense. Appellant is not required to anticipate any and all variant facts the state might hypothetically seek to establish. While the charging instrument follows the language in the statute, this is not sufficient when the statue contains multiple ways to violate the provision.

The charging instrument is also insufficient to bar future charges arising from the same transaction. When appellant petitions for sufficient notice of the state's charge by motion to quash adequately setting out the manner in which notice is deficient, the presumption of innocence coupled with his right to notice requires that he be given such notice. *Drumm v. State*, 560 S.W.2d 944, 946-947 (1977).

Appellant was entitled to such notice and his motion to quash was sufficient to point out his need. The COURT erred as a matter of law and abused its discretion when it refused to issue findings and conclusions and denied appellant's motion to quash. The COURT erred and appellant was harmed by the error. This verdict in this case should be reversed and the case dismissed.

Issue X.     The COURT erred as a matter of law in finding the charging instrument substantively sufficient to allege an offense.

Defendant objected to and continues his objections to substantive defects in the charging instruments filed against him. (CR_285-287, 361-362).

The Court of Criminal Appeals addressed the issue of the necessity of alleging the essential elements of an offense in the case of *George v. State*, 145 S.W.2d 187, 188 (1940), the Court of Criminal Appeals addressed the subject

of the sufficiency of a charging instrument alleging registration violations. The court stated:

> "It is our opinion that the above allegation is not sufficient to apprise appellant in what way he had failed to follow the requirements of the law relative to the registration of the automobile that he was operating on such highway. There is more than one article of the statute governing the proper registration of motor vehicles, and the complaint as herein presented might include a violation of any one of such articles as a basis of this prosecution. Appellant is entitled to have the complaint apprise him in no uncertain terms of the specific requirement of the law that he had failed to comply with, and if necessary, prepare a defense, if possible or desired..."

> "It is not always sufficient to follow the language of the statute. There are cases that require greater particularity, either from the obvious intention of the Legislature or from the application of known principles of law,.."

There is no allegation that appellant was "a resident of this state" or had purchased a vehicle in the 30 days prior to this transaction. There is no allegation appellant is a "person" as defined by the code. There is no allegation of specifically how appellant's private property was being "used" as a "device" to transport or draw persons or property as defined in the TC. There is no allegation that appellant committed an act within the territorial jurisdiction of "State." If the charging instrument fails to allege an offense against the laws of Texas, *see* Tex. Const. Art. V, §12(b)6, it is subject to

exception by a motion to quash. Appellant objected to these defects prior to trial (CR 285-287).

Because judicial action without jurisdiction is void, it cannot be waived and may be raised at any time by direct or collateral attack. Although most rights and procedural matters may be waived, jurisdictional matters may not. A judgment which is void, is conclusive of nothing, and may be subject to inquiry in a collateral proceeding. *Ex parte Duncan*, 42 Tex.Cr.R. 661, 62 S.W. 758; *Ex parte Cannon*, 546 S.W.2d. 266; *Casias v. State, Tex.Cr.App.*, 503 S.W.2d. 262, 263 (1973). *see* CCP Art. 27.08. To warrant a conviction, an action or omission must be plainly and unmistakably within the definition of the statue, within both the letter and the spirit of the law, and if there is any doubt whether the statute embraces it, that doubt must be resolved in favor of the accused. *see Thomas v. State*, 919 S.W.2d. 427, 430. Belcher testified that Appellant's property was not registered as a motor vehicle at the time of this stop. Only persons who apply for registration are issued license plates and are required to display them under TC §504.010. The COURT erred as a mater of law and abused its discretion when it found the charging instrument sufficient to allege an offense. The judgment in this case should be reversed and dismissed.

Issue XI.    The TC "as applied" to appellant violated U.S. Constitution,

Sixth Amendment.

Application of the TC to appellant's private property and activities is unconstitutional as a violation of the Sixth Amendment to the federal constitution (CR_365-366). The Sixth Amendment guarantees to every Citizen of the Union in a criminal prosecution, the right to a "speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed..." The term "State" as used in the TC, means only territories and possessions of the United States, not states in the Union. The record shows that the activities, which are the subject of this transaction, occurred within the exclusive territory of the Union state of Texas, city of FRISCO, county of Collin.

This transaction did not occur within the territory of "State" as defined in the TC. The COUNTY COURT enforcing this code is not sitting as a general jurisdiction court of the de jure government of Texas, acting as a state in the Union enforcing its general laws. The COUNTY COURT in a TC case is sitting as an administrative court enforcing federal territorial law. Appellant's trial and conviction in this administrative court acting under federal authority is not a trial in the "state and district wherein the crime shall have been committed" pursuant to the Sixth Amendment to the federal

constitution. A trial before this administrative court, applying federal territorial law is a violation of the Sixth Amendment to the federal constitution. This case should be reversed and dismissed.

Issue XII.    The Subject Matter of the TC is unconstitutionally vague.

It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined. *see Papachristou v. City of Jacksonville*, 405 U.S. 156, 165 (1972); *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006), cert. denied, 127 S.Ct. 176 (2006). When reviewing an attack upon the constitutionality of a statute, we begin with the presumption that the statute is valid and the legislature has not acted unreasonably or arbitrarily. *see Luquis v. State*, supra; *Ex parte Ports*, supra; *Papachristou v. City of Jacksonville*, supra; *State v. Holcombe*, supra; *Grayned v. City of Rockford, supra*. A vague law impermissibly delegates basic policy matters to policemen, judges and juries. See *Grayned v. City of Rockford*, supra.

Appellant challenged the constitutionality of the TC "as applied" to his private travel in his motion to quash the complaint because the subject matter "transportation" is vague (CR_295-297, 364-365). Appellant argued that the PROSECUTOR and the COUNTY COURT improperly interpreted and

Appellant's Brief
No. 05-15-00148-CR

applied the TC to appellant's private property when said property was being used for purely private activity. Applying the TC to activity not expressed in the subject of the bill violates the Texas Constitution, Art. 3, § 35. The COUNTY COURT and STATE OF TEXAS have refused to take judicial notice of the definitions of "transportation" and "travel" provided by appellant (CR_307-312). The COUNTY COURT and STATE OF TEXAS have refused to provide any definition for "transportation" as used to define the subject matter in the enacting clause of the TC. Appellant's interpretation of these terms was obtained from established dictionaries, both lay and legal that are not subject to dispute. The subject matter of a law must be clear and definite if it is intended to regulate the activities of the sovereign People of Texas.

If a Citizen of average intelligence cannot definitely know what activity is being regulated, the law is vague and therefore void for vagueness. *See Winter v. People of State of New York*, 333 U.S. 507, 517-520 (1948). The notion that the law is definite and knowable sits at the foundation of our legal system. *See Cheek v. United States*, 498 U.S. 192, 199 (1991). To warrant a conviction, an action or omission must be plainly and unmistakably within the definition of the statue, within both the letter and the spirit of the law, and if there is any doubt whether the statute embraces it, that doubt must be resolved in favor of the accused. see *Thomas v. State*, 919 S.W.2d. 427, 430. If

appellant's request for notice of the definition of transportation does not accurately define the subject matter of the TC, and the COURT adopts some other undisclosed or unknown definition, the subject matter of the TC "as applied" to appellant is ambiguous and therefore void for vagueness. If a criminal statute is so indeterminate that "men of common intelligence must necessarily guess at its meaning," the law is constitutionally void for vagueness. *United States v. Lanier,* 520 U.S. 259, 266 (1997) (quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391 (1926)).

Issue XIII.   <u>Belcher's testimony should have been limited.</u>

Appellant made pretrial motion to limit BELCHER's testimony when using certain technical and statutory terms as either a lay or expert witnesses under Rule of Evidence 701, 702 and 704 (CR_303-307). Appellant first wanted an offer of proof that Belcher knew and understood the definitions of the words she was using to describe appellant's activities and his property. The COUNTY COURT refused to hear Appellant's motion because it should have been titled a motion in limine. It was error for the COUNTY COURT not to treat Appellant's motion in the nature of the motion and not based on its title. *State v. Evans,* 843 S.W.2d 576 (Tex.Cr.App. 1992). The motion should have been decided on its merits. Such a hearing would have limited the testimony of Belcher when she used statutory and technical terms without proof in the

record that she knew and understood the meanings of the terms she was using. The testimony should have been limited or excluded after proper and timely objections under Rules of Evidence 701, 702, 704 and 705. A lay witnesses' testimony was found to be inadmissible in the case of *Lum v. State*, 903 S.W.2d. 365, 370 (Tex. App. – Texarkana 1995, pet. Ref'd) lay witness not shown to be familiar with legal definition of negligence; An expert witness was erroneously allowed to testify in the case of *E-Z Mart Stores, Inc. v. Terry*, 794 S.W.2d. 63, 64-65 (Tex.App. – Texarkana 1990, writ denied) expert testimony that defendant was negligent was erroneously admitted because legal definition of negligence was not explained to witness and he did not demonstrate knowledge of its meaning. Other cases on this point are *Louder v. De Leon*, 754 S.W.2d 148, 149; *Fairow v. State,* 943 S.W.2d 895, 900; *Harvey v. Culpeper*, 801 S.W.2d 596, 600-01 (Tex.App.-Corpus Christi 1990, no writ).

These cases establish a standard for the admission of expert or lay testimony. Any witness testifying under Tex. Rule of Evidence 701 or 702 must demonstrate that the witness knows and understands the legal definition of terms she uses during her testimony. It was harmful error not to hear and consider this motion.

Issue XIV.   The CLERK's affidavit is defective as a charging instrument.

Appellant challenges the affidavit of the CLERK of the CITY OF FRISCO MUNICIPAL COURT as defective (CR_272-273, 275-78, 370-371). The CLERK is attesting to alleged facts that are based on information provided in a report that is not verified.

The CLERK is not a proper officer to act as affiant in a criminal prosecution. The charging instrument is labeled a "complaint," but it is actually in the nature of an "information." The allegation is based on information provided by some credible person.  There is no provision in C.Crim.Proc. Art. 45 that authorizes a charging instrument based on information provided by some credible person. However, Art. 45.002 states in part:

> "...If this chapter does not provide a rule of procedure governing any aspect of a case, the justice or judge shall apply the other general provisions of this code to the extent necessary to achieve the objectives of this chapter."

This charging instrument should be held to the standards of an "information" under C.Crim.Proc. Arts. 21.20, 21.21 and 21.22. An information shall not be presented until affidavit has been made by some credible person charging the appellant with an offense. The affidavit must be filed with the information. No such affidavit was filed with this charging instrument. It is therefore defective and should have been quashed.

Appellant's Brief
No. 05-15-00148-CR

Issue XV.    Belcher's unsworn report cannot support an information.

Belcher's unsworn report serves as the basis for allegations made in the charging instrument (CR_277-278, 370). The CLERK's affidavit is in the nature of an information under C.Crim.Proc. Arts. 21.20, 21.21 and 21.22. Belcher's unverified report should be viewed as a complaint in support of the information made by the CLERK. Belcher's unsworn report is insufficient to support an information. The COURT erred as a matter of law when it found that BELCHER's report was reliable and sufficient to support a charging instrument.

Issue XVI.    Appellant's request for judicial notice of adjudicative facts should have been granted.

Under Texas Rule of Evidence 201(b), a court may take judicial notice of facts that are not subject to reasonable dispute if the facts are either (1) notorious, that is, generally known within the territorial jurisdiction of the trial court, or (2) verifiable, that is, capable of accurate and ready determination by resorting to sources whose accuracy cannot reasonably be questioned. *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005); *see Office of Pub. Util. Counsel v. Pub. Util. Comm'n,* 878 S.W.2d. 598, 600 (Tex. 1994). An explicit definition of

"transportation" is essential to a lawful interpretation and application of this code. An unambiguous definition is also necessary to give Citizens of Texas proper notice of what activity is subject to regulation and control by this code. see Tex. Const., Art. III, §35. Appellant filed a request for judicial notice of the definition of the term "transportation" (CR_308-313, 374-375). The PROSECUTOR failed to file a response to the requested notice and offered no interpretation at the hearing. The COURT denied the motion and did not state exactly what activity is the subject of regulation by this code (CR_338). Appellant provided a definition from sources whose accuracy cannot be reasonably questioned. It was harmful error for the COUNTY COURT not to notice the requested definition and provide a lawful interpretation expressing the subject matter of this code.

Issue XVII.  The COURT erred as a matter of law and abused its discretion when it refused to strike the testimony of BELCHER.

Appellant made a motion to strike all testimony of Belcher, where she used statutory terms to describe appellant's activities at the close of the PROSECUTOR's presentation of evidence. Belcher testimony is conclusive evidence that she doesn't understand the meanings of statutory terms she used to describe Appellant and his property and activities.  The law does not

support Belcher's interpretation of the relevant TC sections. Her testimony was unreliable and therefore inadmissible because not relevant or helpful to the trier of fact. *see Lum v. State*, supra; *E-Z Mart Stores, Inc. v. Terry*, supra; *Louder v. De Leon*, supra; *Fairow v. State*, supra. At the conclusion of the presentation of evidence by the PROSECUTOR, Appellant renewed his objections by moving the COURT to strike Belcher's testimony where she used terms that were defined by statute (RR_Vol._3, 80:8-81:17) (CR_373-374). The COURT denied the motion. The testimony should not have been admitted in the first instance and should have been stricken from the record on timely motion of appellant. The COURT erred as a matter of law and abused its discretion when the motion to strike was denied after timely objection. The error was harmful to Appellant and should not have been considered.

Issue XVIII. <u>The COURT erred as a matter of law when it found the evidence sufficient to support conviction.</u>

Appellant challenged the sufficiency of the evidence in his motion for new trial (CR_375-376). There was no reliable evidence that prior to seizing Appellant, Belcher was in possession of reliable information that Appellant was required to register his private property as a vehicle and display license

plates on it; that appellant was engaged in "transportation" on a "public highway;" that Appellant has the status of "person;" that Appellant committed any act or omission within the territorial jurisdiction of "State;" or that Appellant committed an offence against the laws of Texas. BELCHER's testimony shows that prior to seizing appellant, she knew nothing about Appellant. There was no reliable evidence the TC is a general law of Texas that applies to Appellant as a Citizen of Texas.

Belcher's testimony, in which she used terms that were defined by statute, should not have been admitted after timely and proper objection by appellant. All testimony of Belcher, in which she used terms that were defined by statute, was not reliable and should have been stricken from the record after timely motion to strike by appellant (RR_Vol._80:8-81:17). Even with the admission of Belcher's testimony, the evidence presented was insufficient to support conviction. No offense against the laws of Texas was alleged; and Belcher's testimony was not credible and was insufficient to support conviction.

## CONCLUSION

The record on appeal shows the COUNTY COURT did not apply a correct interpretation of the TC to the facts in convicting Appellant. The COUNTY COURT committed numerous fundamental errors and abuses of discretion in pretrial motions, during the trial and post trial motions. Because this appeal challenges the interpretation and application of the TC to the facts of this case, Appellant has provided a complete record to the Court of Appeals and seeks a de novo review. These errors and abuses were harmful to appellant and this conviction should be reversed and dismissed.

## PRAYER

Wherefore, appellant prays that the Court of Appeals, will reverse the conviction of the trial COURT and dismiss the charge against him.

Respectfully submitted,

Robert Earl Marzett
Sui Juris, a natural person
All rights reserved without prejudice
9720 Coit Road #220-116
Plano, Texas
Tel. 214-868-8698

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations on Tex. R. App. P. 9.4(i)(2)(B) because it contains 14,723 words, excluding parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac version 14, in 14 point Times New Roman font with 12 point for footnotes.

_____
Robert E. Marzett


## CERTIFICTE OF SERVICE


This is to certify, pursuant to Tex. R. App. P 9.5, on this the 9th[th] day of January, 2015, a true and correct copy of the above and foregoing instrument was served upon appellee's counsel of record at the below listed addresses using the following methods.

Personal Delivery

COLLIN COUNTY DISTRICT ATTORNEY
2100 Bloomdale Road
McKinney, Texas 75071

_____
Robert E. Marzett